**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

IRVIN VERNON MASON,                )
                                   )
                                   )    CIVIL ACTION NO. 3:08-1851-MBS-JRM
                Petitioner,        )
                                   )
v.                                 )    **REPORT AND RECOMMENDATION**
                                   )
WARDEN,  EVANS                     )
CORRECTIONAL INSTITUTION,  )
                                   )
                Respondent.        )
_____)

        Petitioner, Irvin Vernon Mason ("Mason"), is an inmate with the South Carolina Department

of Corrections serving a sentence of fifteen (15) years imprisonment for common law robbery and

five (5) years for conspiracy (concurrent), both consecutive to a North Carolina sentence he was

serving at the time of his sentencing in South Carolina.  On May 12, 2008, Mason filed a *pro se*

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The case was automatically

referred to the undersigned pursuant to Local Rule 73.02(B)(2)(c) and (e) (D.S.C).  Respondent filed

a motion for summary judgment on September 5, 2008.  An order pursuant to Roseboro v. Garrison,

528 F.2d 309 (4ᵗʰ Cir. 1975) was entered on September 8, 2008.  Mason filed his response to the

motion for summary judgment on September 17,  2008.

**Background and Procedural History**

        During the early morning hours of May 3, 1998, Mason robbed a convenience store in Lake

Wylie (York County), South Carolina while armed with a pocket knife.  He apparently fled to North

Carolina where he committed another robbery and was arrested.  South Carolina law enforcement

1

officers interviewed Mason while he was incarcerated in North Carolina, and he confessed to the

Lake Wylie robbery. (App. 8).  Thereafter, a warrant for the Lake Wylie robbery was issued.  The

record shows the following occurred:

1.      The warrant for the Lake Wylie robbery was filed as a detainer in North Carolina on
        or about June 2, 1998. (Pet., Ex. 2).

2.      Mason signed a waiver of extradition on June 3, 1998. (Pet., Ex. 4).

3.      Mason was convicted of the North Carolina robbery on February 19, 1999 and was
        sentenced to imprisonment for six years and nine months. (Pet., Ex. 9).

4.      On July 29, 1999, Mason wrote the York County Solicitor seeking a speedy trial.
        (Pet., Exs. 6 and 9).

5.      On August 11, 1999 the Solicitor's Office forwarded the North Carolina Department
        of Corrections Mason's letter and indicating that Mason would need to complete
        North Carolina paperwork so that the request could be processed.  (Pet., Ex.

6.      Mason was brought to South Carolina for prosecution on November 12, 1999. (Pet.,
        Ex. 10; Res.Mem., Ex. 1, p. 11).

7.      Mason pled guilty to a reduced charge of strong arm robbery and conspiracy in York
        County on February 11, 2000. (Res.Mem., Ex. 1).

8.      Mason did not file a direct appeal.

9.      Mason filed an application for post-conviction relief ("PCR") on December 12, 2000
        ("PCR I"). (Res.Mem., Ex. 3).  A hearing was held April 5, 2002.  As Mason was still
        serving his North Carolina sentence he was not present, but was represented  by
        Thomas L. Ogburn, III, Esquire. (Res.Mem., Ex. 6).

10.     The PCR court dismissed the application without prejudice on August 30, 2002, and
        ruled that Mason would be allowed to file his PCR within "one year from his release
        from custody in North Carolina". (Res.Mem., Ex. 6).

11.     It appears that Mason completed his North Carolina sentence on May 28, 2003.
        (Res.Mem., Ex. 7).

12.     Mason filed his second PCR ("PCR II") on January 16, 2004. (Res.Mem., Ex. 7).

13.     An evidentiary hearing was held on March 16, 2006.  Mason was represented by

Chad Smith, Esquire.  PCR II was denied by order filed May 17, 2006. (Res.Mem., Ex. 10).

14.    Mason filed a *pro se* motion to alter or amend the judgment on June 16, 2006. (Res.Mem., Ex. 11).

15.    The motion was denied by order filed January 26, 2007. (Res.Mem., Ex. 13).

16.    Mason did not appeal.

17.    Mason filed a third PCR, designated "Austin Petition" on October 4, 2006 ("PCR III"). (Res.Mem., Ex. 14).

18.    The PCR court issued a conditional order of dismissal filed April 15, 2008. (Res.Mem., Ex. 16).

19.    A final order was filed on July 23, 2008 finding that PCR III was successive and, therefore, barred pursuant to S.C.Code Ann. § 17-27-90.  Mason did not appeal.

## Grounds for Relief

**Ground One:**          Denial of fast and speedy trial.

**Ground Two:**       Lack of Due Process and Lacked Subject Matter
Jurisdiction

**Ground Three:**       Ineffective Assistance of Counsel

**Ground Four:**       Denied Credit for pretrial detainment/Jail credit

### A.  Anti-Terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations

Respondent asserts that the petition should be dismissed because it was not timely filed under

the one-year statute of limitations created by the AEDPA.  The AEDPA became effective on April

24, 1996.  The AEDPA substantially modified procedures for consideration of habeas corpus

petitions of state inmates in the federal courts.  One of those changes was the amendment of 28

U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.  Subsection

(d) of the statute now reads:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not at the end of collateral review.  Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000).  In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR.  Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt.  Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001).  If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court.  Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State

4

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."

28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-

conviction process, "from initial filing to final disposition by the highest state court (whether decision

on the merits, denial of certiorari, or expiration of the period of time to seek further appellate

review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state

courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United

States Supreme Court, nor the time a petition for certiorari is considered by the United States

Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must

be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n

application is 'properly filed' when its delivery and acceptance are in compliance with the applicable

laws and rules governing filings. These usually prescribe, for example, the form of the document,

the time limits upon its delivery, the court and office in which it must be lodged, and the requisite

filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction

petition is untimely under state law, 'that [is] the end fo the matter' for purposes of § 2244(d)(2)."

Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R.

Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but

subject to the doctrine of equitable tolling. Equitable tolling applies only in "those race instances

where–due to circumstances external to the [petitioner's] own conduct–it would be unconscionable

to enforce the limitation against the [petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the

State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of

5

establishing the doctrine does not apply.  Hill v. Braxton, 277 F.3d 701 (4ᵗʰ Cir. 2002).  To benefit

from the doctrine of equitable tolling, a petitioner must show: (1) extraordinary circumstances, (2)

beyond his control or external to his own conduct, (3) that prevented him from filing on time.  Rouse

v. Lee, 339 F.3d 238 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004).  It is clear that a pro se

prisoner's ignorance of the law is not a basis to invoke equitable tolling.  United States v. Sosa, 364

F.3d 507, 512 (4ᵗʰ Cir. 2004).  Likewise, an attorney's mistake in calculating the filing date of the

AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling.

Harris, 209 F.3d at 331.

It appears that Mason was returned to North Carolina after his guilty plea on February 11,

2000 and remained there until May 28, 2003.  Mason did not file a direct appeal, and his conviction

became final on February 21, 2000.  However, since Mason was precluded from filing a PCR until

his return to South Carolina by PCR I, the undersigned finds that the statute of limitations did not

begin to run until May 28, 2003.  Two hundred and thirty three (233) days of untolled time lapsed

before Mason filed PCR II.  The statute of limitations was tolled until January 26, 2007 when PCR

II was finally concluded by denial of the motion to alter or amend the judgment. *See* Harris v.

Hutchinson, *supra*.  Since PCR III was dismissed as successive (i.e., not properly filed), it did not

further toll the statute of limitations. (*See* Pace v. Di Guglielmo, 544 U.S. 408, 417 (2005)). The

envelope in which the present petition was received by this Court indicates that it was received by

the institutional mailroom on May 7, 2008. The undersigned finds that for statute of limitations

purposes the petition is deemed filed as of that date.  Therefore, an additional four hundred and sixty

one (461) days of untolled time lapsed form the conclusion of PCR II until the present petition was

filed.  This means that a total of six hundred and ninety four (694) days of untolled time lapsed before

the petition was filed.

Mason appears to assert that he is entitled to equitable tolling because of communication problems he had with his attorney in PCR II.  However, the difficulty is largely attributable to Mason. His attorney, Mr. Smith, wrote him on June 5, 2008 sending him a copy of the order of dismissal in PCR II and advising of the time to appeal.  According to Mason, he received this letter on June 9, 2006.  According to further correspondence from Mr. Smith, he did not receive word that Mason wanted to appeal until after the deadline had passed. (*See* <u>Roseboro</u> response with attachments). Further, Mason filed a *pro se* motion to alter or amend the judgment.

The undersigned concludes that the present petition is untimely and that Mason is not entitled to equitable tolling.

### B.  Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts.  The two theories rely on the same rationale.  The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1.    Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A)  the applicant has exhausted the remedies available in the courts of the State; or

(B)(i)  there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2)    An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)    A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  See O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68,

8

221 S.E.2d 767 (1976).  The second avenue is by filing an application for post-conviction relief

("PCR").  See S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his

grounds for relief in his application.  See, S. C. Code Ann. § 17-27-90.  A PCR applicant cannot

assert claims on collateral attack which could have been raised on direct appeal.  Simmons v. State,

264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a

PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims

specifically addressed by the PCR court.  If the PCR court fails to address a claim as is required by

S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the

judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a

procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266

(2007).   A PCR must be filed within one year of judgment, or if there is an appeal, within one year

of the appellate court decision.  S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only

those issues which were presented to the South Carolina Supreme Court through direct appeal or

through an appeal from the denial of the PCR application, whether or not the Supreme Court actually

reached the merits of the claim.[1]  Further, he may present only those claims which have been squarely

presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim],

the substance of [the] claim must have been fairly presented in state court...that requires the ground

relied upon [to] be presented face-up and squarely.  Oblique references which hint that a theory may

be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir.

---

[1]In cases where the South Carolina Supreme Court applied a procedural bar, however, this
court is directed to also apply that bar, except in certain limited circumstances.  See discussion
below on procedural bypass.

1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  See Rose v. Lundy, supra.

### 2.     Procedural Bypass[2]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts.  If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition.  The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion.   The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time.  Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  State procedural rules promote

---

[2]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

> not only the accuracy and efficiency of judicial decisions, but also the finality
> of those decisions, by forcing the defendant to litigate all of his claims
> together, as quickly after trial as the docket will allow, and while the attention
> of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant
> succeeds in showing both 'cause' for noncompliance with the state rule and
> 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.     Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

11

### 4.     Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an

actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show

prejudice.  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default.

O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997).  To prevail

under this theory, a petitioner must produce new evidence not available at trial to establish his factual

innocense.  Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999).  A petitioner may establish actual

innocense as to his guilt, Id., or his sentence.  Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

**5.    Procedure**

Procedural default is an affirmative defense which is waived if not raised by

respondents.  Gray v. Netherland, 518 U.S. at 165-66.  It is petitioner's burden to raise cause and

prejudice or actual innocense.  If not raised by petitioner, the court need not consider the defaulted

claim.  Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

The record shows that Mason did not file a direct appeal and never filed a petition for writ

of certiorari following denial of his PCRs.  Therefore, his present claims are procedurally barred.

## Conclusion

Based on a review of the record, it is recommended that Respondents' motion for summary

judgment be **granted** and the petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

March 10,  2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

13

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).